## GUY MOORE v. THE STATE.

### No. 3843. Decided December 1, 1915.

**1.—Carrying Pistol—Sufficiency of the Evidence—Wooden Imitation Pistol.**

Where, upon trial of unlawfully carrying a pistol, the State's evidence clearly showed that the defendant carried a pistol as alleged, and the court submitted a proper charge on defendant's theory of defense that he only carried a wooden imitation pistol, and did not have a real pistol as alleged, the conviction was sustained, and there was no reversible error on that ground.

**2.—Same—Evidence—Other Transactions.**

Where, upon trial of unlawfully carrying a pistol, the State's evidence showed that defendant carried said pistol in a certain saloon, and that he was also seen about the same time with said pistol outside of said saloon, and defendant claimed that only what occurred about the pistol inside of said saloon was admissible in evidence, and that testimony as to his having a pistol outside thereof, was inadmissible, the same was untenable, and there was no error.

**3.—Same—Witness—Competent Testimony.**

Upon trial of unlawfully carrying a pistol, there was no error in introducing a State's witness who was confined in jail on a charge of murder, or in the court's failure to charge the jury that they should consider the charge of murder pending against said witness as affecting his credibility; besides, no objection was made to the court's charge, or a special charge requested.

Appeal from the County Court of Gonzales. Tried below before the Hon. J. W. Holmes.

Appeal from a conviction ·of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*Atkinson & Atkinson,* for appellant.—On question of permitting witness in jail to testify: Lights v. State, 17 S. W. Rep., 428; Crockett v. State, 49 S. W. Rep., 392; Branch's Crim. Law, paragraph 868.

On question of time and place: Willis v. State, 15 Texas Crim. App., 118; Buntain v. State, 15 id., 490; Price v. State, 36 Texas Crim. Rep., 143; Newberry v. State, 32 id., 145.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted for unlawfully carrying a pistol, and assessed the lowest punishment.

Zeke Williams testified that, on or about the date the appellant was charged with carrying a pistol: "I saw the defendant that day with a pistol. It was in Stahl's saloon in the town of Gonzales. He was standing at the bar and was 'setting 'em up,' and he held the pistol over his head ·and sorter waved it around. I was a few feet off, say, as far as from here to that gate (indicating a gate to the bar of the court, some twelve or fourteen feet off). This was on the inside of Stahl's saloon and defendant was at the counter and was drinking with

other persons. There were present at that time as I remember Jim Parramore, Love Reed, the bartender, Houston Jones, and others, whose names I do not remember just at this time. I am certain it was a pistol because I saw him put it over his head, straight up in the air. This occurred inside of Mr. Stahl's saloon in broad open daylight. No, sir, I never had the pistol in my hand at all. Guy just held it up above his head in his own hand."

Houston Jones testified that he remembered the time he saw appellant with the pistol, about the date charged in the information. He said: "He was standing on the sidewalk on the outside of Mr. Stahl's saloon in Gonzales and he just pulled back his coat and showed me the pistol and said that 'Nobody can carry this but me and Mr. Neighbors and Mr. Wright. (Mr. Neighbors is the sheriff of the county and Mr. Wright is the constable of precinct No. 1, in which the town of Gonzales is situated.) I know the defendant well and know that I saw him at that time with the pistol and heard what he said and can not be mistaken about it. The pistol was a red-handled pistol, because I saw it and it looked like red cedar. No, sir, I never had the pistol in my hand at all, but just saw it in the band of Guy's pants."

John Washington, after telling that he knew the appellant well and that he saw him in Gonzales about the time alleged in the indictment, testified: "We were together on the outside of the saloon of Mr. Stahl and he pulled back his coat and showed me the pistol and said that 'he was a deputy sheriff.' It appeared to me to be a black-handled pistol. He sort of pulled it up and I judged it to be a black-handled pistol with a black or blue steel cylinder and barrel. I am certain it was a pistol, and I thought at the time that the defendant was a deputy sheriff and had a right to carry the pistol. I never had my hands on the pistol at all, but just saw it sticking in the defendant's pants where he showed it to me."

Mitchell Williams, after testifying that he knew appellant and saw him in Gonzales about the time charged in the indictment, testified: "I saw him at or near the hamburger stand, next to Mr. Stahl's saloon and he showed me a pistol sticking in the belt of his pants. He kinder pulled it up and showed it to me. The hamburger stand is located out on the sidewalk east of and near the saloon of Mr. Stahl."

Newt Jones, after testifying that he was in jail in Gonzales confined on a charge of murder, testified: "I saw the defendant, Guy Moore, some time on or about the date charged in the complaint out on the sidewalk near Mr. Stahl's saloon in the town of Gonzales with a pistol on his person. He pulled back his coat and showed me the pistol. I thought he was an officer because I believed that he would not show the pistol as he did unless he had a right to carry it. I am sure he had a pistol. I can not be mistaken about it, because I noticed particularly the steel rim between the handles on each side, that is, the steel rim to which each side of the handle of the pistol was riveted. I am sure it was the steel frame of a pistol that I saw. Guy Moore said, 'Newt, you are all right and Mr. Neighbors (the sheriff of Gon-

zales County) thinks I am all right,' and pulled up the pistol and showed it to me."

Appellant introduced Louis Mueller, who testified that he carved out of wood an imitation pistol and sold it to appellant in January. This wooden imitation of a pistol was produced, identified and introduced in evidence. He said that appellant at the time he bought it said that he wanted it to have some fun with the boys. Appellant testified and produced this wooden imitation pistol and swore that at the time he was charged with this offense he did not have any pistol other than this wooden imitation. The wooden imitation is sent up to this court and properly identified. We have examined it. Appellant further testified: "I had the pistol in the waistband of my pants and pulled back my coat and showed the article to several different boys, but I do not remember pulling it out and flourishing it about in the saloon, but I might have done so, for I had no intention of concealing it. I positively deny that I ever told any person that I was a deputy sheriff, either on that occasion or any other, and I also positively deny that I ever told anyone that only myself and Mr. Neighbors and Mr. Wright could wear a pistol." He further testified that he had bought it from said Mueller and that he told him at the time that he was going to have some fun with it with the boys. He further testified: "These boys may have thought I had a real pistol because it was my idea to fool them and have some fun with the imitation pistol. I do not remember who all I showed it to, but it was quite a number. I did not let any of them handle it because I knew they would see at once that it was not a pistol and then my fun would be over."

The court gave a correct charge and therein required the jury to believe beyond a reasonable doubt that appellant had a pistol on the occasion charged before they could convict him. In addition, he gave this charge requested by appellant: "You are further charged in this case at the request of the defendant that if you believe from the evidence, or have a reasonable doubt of the fact that the article exhibited by the defendant at the time he is charged with carrying a pistol, was anything other than a real weapon and a complete pistol, then you will acquit the defendant, and say by your verdict 'not guilty.'" The evidence was amply sufficient to sustain the verdict, and we can not set it aside.

Appellant has some bills of exceptions to the testimony of some of the State's witnesses, claiming that only what occurred about the pistol inside of Stahl's saloon was admissible, and that the testimony of the other witnesses that they saw him on the outside of the saloon with the pistol was inadmissible. The court in qualifying his bills on this subject states that he allowed such testimony, because that at the time the witnesses testified about seeing the pistol on the outside was on the same day and within a few minutes of the time he was alleged to have been seen on the inside with said pistol. We think all this testimony was clearly admissible and the court's ruling was correct. The witness Newt Jones was not incompetent to testify because he was confined in

jail on a charge of murder, as there is no intimation that he had ever had a trial or had ever been convicted of that offense. Nor did the court err in refusing appellant's charge instructing the jury that they should consider the charge of murder pending against said witness as affecting his credibility. This would have been on the weight of the testimony. However, this question is not presented in such a way that we can consider it. He made no objection to the court's charge, because the court did not charge on that subject; nor does his bill show he presented his charge to the court at the proper time.

The judgment is affirmed.                                    *Affirmed.*